IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00178 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BARRY N. ODEGAARD, M.D., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

On May 4, 2007, the Court heard Defendant's Motion to Suppress

Statements.   Jonathan M. F. Loo, Assistant U.S. Attorney, appeared at the hearing

on behalf of Plaintiff; Birney B. Bervar, Esq., appeared at the hearing on behalf of

Defendant.  After reviewing the motion and the supporting and opposing

memoranda, the Court DENIES Defendant's Motion to Suppress.

BACKGROUND

The following testimony was adduced during the hearing.[1]  On

April 3, 2006, approximately 7-9 federal agents, including Agent John Palomo

---

[1]  The Court also relies on Agent Palomo, Evan Shirley, and Defendant's
declarations that were attached to the motion, opposition, and reply.

of the Drug Enforcement Agency ("DEA"), arrived at Defendant Dr. Barry N.

Odegaard's Kahala medical offices to serve Defendant with arrest and search

warrants.  When they arrived, some patients and employees were present.  Upon

arrival, the agents directed that Defendant step into his private office.  (Motion at

1; Palomo Decl. at ¶ 4.)  The parties differ in their presentation of the events that

follow.

        Defendant testified that the agents arrived at approximately 9:15 or

9:30 a.m., not 10:15 a.m., according to Agent Palomo.  While in the private office,

Defendant testified that, despite repeated requests for counsel, Agent Palomo

began to question Defendant about accepting cash payments from his patients.

Defendant also claims that, as he reached for his cell phone to call his lawyer,

Agent Palomo told him that he could not use his cell phone, nor could he use the

office telephone.  During that time, Defendant maintains that Agent Palomo was

questioning and interrogating him. Defendant testified that the questioning lasted

for about a half hour or 45 minutes.  After that period of questioning, Defendant

was handcuffed, brought to a DEA vehicle, and again questioned.  Defendant

testified that, while in the vehicle, he could see his civil attorney Evan Shirley, who

had arrived by that point, talking to Defendant's wife.  The vehicle was

approximately 15-20 feet away from Mr. Shirley, his wife, and Defendant's wife.

2

Defendant testified that all three of them walked past the vehicle and upstairs to his office, then, he presumed, they came back down, and they walked past the vehicle again. Defendant claims that, while in the vehicle, he requested to talk to his attorney, and he was denied that request.  Defendant states that he again requested counsel when he arrived at the DEA federal building, but he was denied that request and the questioning continued.

Defendant further testified that he signed the Advice of Rights form because the agents had told him that they could hold him indefinitely if he did not; otherwise, he could be released that day.  Defendant testified that he did not recall seeing the search warrant or the indictment, and that he did not sign the Advice of Rights form until he got to the DEA federal building.  The Advice of Rights form was signed at 10:28 a.m., and it indicates Kahala as the place where it was executed.  (Govt's Ex. A.)

Agent Palomo's recollection of the events during the hearing and as stated in his declaration contradicts much of Defendant's.  Agent Palomo testified that he, along with approximately 7-9 other agents and officers, arrived at Defendant's office at around 10:15 a.m.  (Palomo's Decl. ¶ 3.)  While in Defendant's private office with DEA Special Agents Wise and Lupacchino, he advised Defendant why the agents were there, and, at approximately 10:28 a.m., he

advised Defendant of his constitutional rights, reflected in DEA Form FD-395.

(Palomo's Decl. at ¶ 5; Govt's Ex. A.)  Agent Palomo testified that he served

Defendant with the search warrant almost immediately after he advised Defendant

of his rights under the advice of rights form.  Agent Palomo signed the Return on

Search Warrant, indicating the time as 10:30 a.m.  (Def's Ex. A.)  After

acknowledging his rights, Agent Palomo testified that Defendant agreed to talk to

the agents without an attorney.  Agent Palomo concedes that, before signing the

form, Defendant asked whether he needed an attorney to review the document, but

testified that, before he could answer, Defendant signed the form, claiming that he

had nothing to hide.  Contrary to Defendant's testimony, Agent Palomo asserts that

he made no threats or promises to induce Defendant's signature during that time,

and he spoke to Defendant in a conversational tone.  (Palomo's Decl. ¶ 5.)  Only

after Defendant signed the waiver did Agent Palomo begin questioning Defendant,

at which point Defendant spoke freely for almost an hour without requesting an

attorney.  (Id. at ¶ 6.)  Agent Palomo also testified that he believes that he showed

Defendant a copy of the search warrant and the indictment.

           In addition, Mr. Shirley testified on Defendant's behalf and provided a

declaration.  According to Mr. Shirley, he received a call from one of Defendant's

patients on the morning of the events, who also happened to be a client of

Mr. Shirley's.  (<u>Shirley's Decl.</u> at ¶ 14.)  That patient contacted Mr. Shirley to

inform him that FBI agents were at Defendant's office and that he believed that

Defendant had been arrested.   (<u>Id.</u> at ¶¶ 15-16.)  After an exchange with the

patient, Mr. Shirley testified that he tried to call Defendant's personal cell and

office telephone number, with no response.  (<u>Id.</u> at ¶¶ 21-22.)   Mr. Shirley testified

that, prior to April 2006, he had advised Defendant on 5 to 10 occasions to remain

silent if questioned by police, to invoke his right to counsel, and to look at the

search warrant, while cooperating as much as he could.   Mr. Shirley and his wife,

who agreed to accompany him, then drove to Defendant's Kahala office to advise

Defendant not to make any statements to the agents.  (<u>Id.</u> at ¶¶ 24-25.)  When he

arrived, Mr. Shirley testified that he started to go into the building, but that

Defendant's wife told him that Defendant already had been taken away.

Defendant's wife was "anxious, nervous, and crying."  (<u>Id.</u> at ¶ 38.)  Mr. Shirley

testified that he did not see Defendant at any point while at the Kahala office,

including the vehicle that was about 15-20 feet away.  Mr. Shirley, his wife, and

Defendant's wife were standing outside of the building between the real estate

office and the entrance of the building.

　　　　At that point, Mr. Shirley called Birney Bervar, a criminal defense

lawyer, to assist.  (<u>Id.</u> at ¶ 42.)  Following the conversation, Mr. Bervar, at the

request of Defendant's wife, agreed to represent Defendant.  (<u>Id.</u> ¶¶ 51-52.)  At some point later, Mr. Shirley claims that Mr. Bervar called him to inform him that he had called the agents after speaking to him; that he told the agents that he wanted to speak to his client; and that he was not permitted to do so.  (<u>Id.</u> at ¶ 54.) Mr. Shirley testified that his first contact with Defendant was later that evening via telephone, not immediately following Defendant's release from custody as he stated in his declaration.[2]  Mr. Shirley testified that he had seen him in the courtroom sitting in the jury box, but that he had not talked to him until later. During that conversation, Mr. Shirley testified that Defendant had told him that he had tried to call him, but that he was not allowed to use the phone.

Elaine Shirley, Mr. Shirley's wife, also testified on Defendant's behalf.  Ms. Shirley confirmed that she went to Defendant's office with Mr. Shirley and that she saw Defendant's wife there.  They were standing in the parking lot. Ms. Shirley testified that she first saw Defendant after he went to court.  Ms. Shirley and Defendant's wife waited for him, and they talked to him upon his release.  She testified that Defendant told her that he had tried to call Mr. Shirley,

---

[2]  Mr. Shirley testified that he mistakenly wrote in his declaration that he saw Defendant immediately following his release, which was inaccurate.  (<u>Shirley's Decl.</u> at ¶ 58.)

but that he was not allowed to use his cell phone and that Defendant was not allowed to make a call until he got downtown.

While the questioning occurred at Defendant's office, the DEA searched his office according to its warrant.  (<u>Motion</u> at 2.)  Moreover, during the subsequent questioning at the federal building, Defendant was shown, at his request, a videotape of undercover meetings containing footage of Defendant accepting $100.00 and $400.00.  Earlier, during the interviews at Defendant's office, he allegedly denied having received $100.00 and $400.00 from a patient in exchange for a prescription.  (<u>Palomo's Decl.</u> at ¶ 7.)  Near the end of the interview, Defendant voluntarily consented to a search of a storage facility where records were kept, and he signed a Voluntary Surrender of Controlled Substances Privileges form.  (<u>Id.</u> at ¶ 8; <u>Govt's Exs.</u> B and C.)

On February 6, 2007, Defendant filed the instant Motion.  On February 26, 2007, the Government filed its Opposition, and Defendant filed a Supplemental Memorandum in Support of his Motion on March 1, 2007.

<u>DISCUSSION</u>

Defendant argues that his statements should be suppressed under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1996) and its progeny, claiming that once counsel is invoked, police officers may not initiate or continue interrogation until

counsel is present, unless Defendant initiates it.  See, e.g., Minnick v. Mississippi,

498 U.S. 146, 153 (1990); Edwards v. Arizona, 451 U.S. 477, 484-85 (1981);

United States v. Lucas, 963 F.2d 243, 246 (9th Cir. 1992); United States v.

Nordling, 804 F.2d 1466, 1471-72 (9th Cir. 1986); U.S. v. Covington, 783 F.2d

1052, 1055 (9th Cir. 1985); United States v. Womack, 542 F.2d 1047, 1051 (9th

Cir. 1976).  The Government does not dispute that Defendant's Sixth Amendment

right to counsel had attached, but contends that Defendant waived his rights,

knowingly and intelligently, before any questioning began.  See Patterson v.

Illinois, 487 U.S. 285, 298 (1988).

             As a threshold matter, the Government moves to strike Mr. Shirley's

declaration to defendant's Motion for failure to comply with Federal Rules of Civil

Procedure 56(e) for summary judgment motions.  Specifically, the Government

asserts that Mr. Shirley's declaration is not based on personal knowledge of the

events that occurred, and it argues that his statements are objectionable on hearsay

grounds.  Defendant responds to that argument in his Supplemental Memorandum,

contending that the Government has the burden of establishing that the evidence

was lawfully obtained; thus, presumably, Defendant did not have the burden of

complying with Rule 56(e).  The Court is unclear as to why the Government

believes that Rule 56(e), which is directed at summary judgment motions in civil

8

cases, would apply here.  The instant motion is a motion to suppress in a criminal case.  The Government has pointed to no law that would suggest that Rule 56(e) can or should apply in criminal proceedings for motions to suppress, and this Court will not, sua sponte, attempt to make such an argument for the Government to extend Rule 56(e) to the instant situation.

As for the Government's argument that Mr. Shirley's testimony is objectionable on hearsay grounds, that simply is not true for the majority of the statements that Mr. Shirley makes based on his recollection of the events as they occurred.  The large portion of Mr. Shirley's testimony that is based on personal knowledge is admissible.  The Court undoubtedly will consider only those events about which Mr. Shirley has personal knowledge.   As such, it will not strike Mr. Shirley's declaration.  Furthermore, the fact that Mr. Shirley was Defendant's "civil" attorney, rather than his criminal attorney, makes no difference in the eyes of the Court.  That distinction, which the Government makes, has no bearing on whether Mr. Shirley's testimony is admissible.

Moving to the merits, the Court finds a number of inconsistencies in Defendant's testimony and in his Motion, lending to its finding that Defendant was not a credible witness.  First, Defendant's Motion contains a factual inconsistency about the timing of Defendant's requests to use his cell phone to call his attorney.

9

In the discussion section, Defendant maintains that he requested counsel and reached for his cell phone to call his attorney <u>after</u> he left the office and <u>after</u> the DEA handcuffed him.  When denied use of his cell phone, he requested to use the office telephone, which request was denied.  Then, once <u>in custody</u>, he was subjected to interrogation.  (<u>Motion</u> at 7.)  Under the Facts section of Defendant's Motion, Defendant indicates that he reached for his cell phone <u>before</u> leaving the office and <u>before</u> being handcuffed, which is consistent with Defendant's testimony during the hearing.  Because that inconsistency might be the mistake of Defendant's attorney, and not Defendant's, the Court, although it finds that inconsistency worthy of mentioning, does not place great weight on it in its determination.

Second, Defendant claims that he did not sign the Advice of Rights form until he got to the DEA federal building.  The form, however, indicates that the place of signature was at the Kahala medical office.  (<u>Govt's Ex.</u> A.)

Third, Defendant testified that he signed the Advice of Rights form because the agents had told him that they could hold him indefinitely if he did not; otherwise, he could be released that day.  Defendant made no mention of that fairly significant threat in his Motion or Reply.  Although that omission does not create an inconsistency, it casts doubt on the credibility of Defendant's claim.

10

Fourth, Defendant claims that the agents arrived at his building at 9:15 or 9:30 a.m., rather than 10:15 a.m.  Defendant did not mention that time in his Motion, nor did he object in his Supplemental Memorandum to the 10:15 a.m. time frame that Agent Palomo supplied.  The Court finds that the 10:15 a.m. time frame is more consistent with the timing of the events that occurred, and it does not find Defendant's testimony credible or consistent in that regard.

Accordingly, the agents arrived at Defendant's office around 10:15 a.m. and Defendant signed the waiver at 10:28 a.m., creating a thirteen minute gap in time, during which the agents supposedly were clearing out and closing Defendant's office.  Thirteen minutes is a fairly substantial amount of time to accomplish those tasks, though not such an unreasonable amount of time as to cast doubt on Agent Palomo's version of events.

Fifth, Defendant claimed that he saw Mr. Shirley enter his building and walk by his car twice.  Mr. Shirley claims that he started to enter Defendant's building, but that he stopped once he saw Defendant's wife and she told him that Defendant had been taken away already.  Mr. Shirley did not mention walking past the vehicle in which Defendant was secured, and he testified that he did not see Defendant in the vehicle, even though the vehicle was only 15-20 feet away, and

11

he supposedly walked past it twice.  Additionally, Defendant was able to see Mr.

Shirley from his vantage point in the back seat of the right-hand side of the vehicle.

Why Mr. Shirley could not likewise see Defendant is unclear.

Sixth, Defendant's wife told Mr. Shirley that Defendant had been

taken away already, even though, according to Defendant, the vehicle was only 15-

20 feet away and Mr. Shirley, his wife, and Defendant's wife allegedly had walked

past it twice.  The Court finds it difficult to believe that <u>none</u> of those individuals

would notice the car and realize that Defendant, in fact, had not been taken away

already.

Aside from the inconsistencies and credibility problems, Mr. Shirley

and his wife's testimony does not shed any additional light on this matter, as

neither of them were present while most of the events occurred.  Although both

witnesses testified that Defendant had told them that he had requested to speak to

Mr. Shirley on a number of occasions, but that he was not allowed to make any

phone calls, the Court does not find Defendant's <u>post hoc</u> claims to be credible.

Based on the credibility of the testimony presented on both sides, the Court simply

does not believe that Defendant made such requests, contrary to Agent Palomo's

testimony, who testified consistently and credibly.

12

CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion

to Suppress.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 7, 2007.

_____
David Alan Ezra
United States District Judge

United States of America vs. Barry N. Odegaard, M.D., Cr. No. 06-00178 DAE;
ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS