IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BARRY N. ODEGAARD, | ) | CV. NO. 10-00599 DAE-BMK |
| | ) | CR. NO. 06-00178 DAE |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

ORDER: (1) DENYING PETITIONER'S § 2255 MOTION AND (2) DENYING
A CERTIFICATE OF APPEALABILITY

After reviewing Petitioner's motion and the supporting and opposing

memoranda, the Court DENIES Petitioner's 28 U.S.C. § 2255 Motion to Vacate,

Set Aside or Correct Sentence.  (Doc. # 188.)  Further, because Petitioner has not

made a substantial showing of the denial of a constitutional right, the Court also

DENIES Petitioner a Certificate of Appealability

BACKGROUND

On March 29, 2006, a grand jury indicted Barry N. Odegaard, M.D.,

("Petitioner") for ten counts of unlawfully distributing the drug oxycodone, a

Schedule II controlled substance, from his medical office, in violation of 21 U.S.C. § 841(a)(1).  (Doc. # 1.)  The indictment essentially alleged Petitioner was prescribing opiate painkillers to patients who did not need the drugs for legitimate medical reasons.  (Id.)

The grand jury also indicted Petitioner for five counts of Medicaid fraud, in violation of 18 U.S.C. § 1347. (Id.)

On March 29, 2006, United States Magistrate Judge Barry M. Kurren issued a warrant for Defendant's arrest.  (Doc. # 2.)  On April 3, 2006, agents executed the warrant and arrested Petitioner at his medical office.  (Doc. # 6.) Petitioner was arraigned on April 3, 2006 and pled not guilty.  (Doc. # 5.)

On March 29, 2007, the Government obtained a First Superseding Indictment adding two more counts: another count of unlawfully distributing oxycodone and a count of unlawfully distributing methadone, also a Class II controlled substance.  (Doc. # 32.)  Each new count alleged the prescribed drug caused the death of the person who obtained the prescription.  (Id.)  Petitioner pled not guilty to the First Superseding Indictment.  (Doc. # 36.)

On May 7, 2008, the Government obtained a Second Superseding Indictment, adding another count of unlawfully distributing oxycodone.  (Doc. # 59.)  The Petitioner again pled not guilty.  (Doc. # 71.)

The Second Superseding Indictment contained eighteen counts. Counts 1 and 6 alleged that Petitioner violated 21 U.S.C. § 841(a)(1) by prescribing a Schedule II controlled substance "outside the course of professional medical practice and not for a legitimate medical purpose . . . the use of which resulted in death." (Doc. # 59.) Counts 2–5 and 7–13 alleged that Petitioner violated 21 U.S.C. § 841(a)(1) by prescribing a Schedule II controlled substance "outside the course of professional medical practice and not for a legitimate medical purpose." (Id.) Counts 14–18 alleged Petitioner committed fraud by billing the Hawaii State Medicaid program for reimbursement for procedures, services, or supplies for which patients already had paid Petitioner. (Id.) A jury trial on the Second Superseding Indictment commenced on May 29, 2008. (Doc. # 84.)

At trial, the Government proffered no evidence supporting the Medicaid fraud allegations and midway through the trial moved to dismiss those counts. (Doc. # 92.) Also at the end of the trial, the Court struck the "resulting in death" language from Counts 1 and 6 but otherwise let the allegations stand. (Defendant-Appellant's Excerpts of Record in Support of Government's Response ("ER") at 1190.) The jury found Petitioner not guilty on Counts 1–7 and 10, which alleged Petitioner had unlawfully distributed and dispensed oxycodone or

3

methadone outside the course of professional medical practice and not for a legitimate medical purpose. (Doc. # 59; ER 1584.)

The jury found Petitioner guilty on five counts: Counts 8–9 and 11–13 which alleged Petitioner had unlawfully distributed and dispensed oxycodone outside the course of professional medical practice and not for a legitimate medical purpose, in violation of U.S.C. § 841(a)(1), 841(b)(1)(c), or both.

The Court sentenced Petitioner to sixty months imprisonment (ER 4–57, 1570–79) and three years supervised release. (ER 1578–79.) In addition, the Court imposed a $12,500 fine. Petitioner did not object to the sentence. (ER 1579–82.)

Petitioner appealed his conviction and sentence on October 20, 2008. On February 5, 2009, appellate counsel sought to withdraw as counsel and to that end filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967) ("Anders Brief"). ("Anders Br.," C.A. No. 08-10462, Doc. # 5.) The Anders Brief stated Petitioner had no meritorious issues to raise on appeal. (Id.) On July 30, 2010, the Ninth Circuit Court of Appeals considered these issues, determined they had no merit, and affirmed the Petitioner's conviction. (Doc. # 186.) In affirming, the

Ninth Circuit Court of Appeals stated that it had given Petitioner the opportunity to file a pro se supplemental brief, but that Petitioner had not done so.  (Id.)

On October 14, 2010, Petitioner filed the present 28 U.S.C. § 2255 Motion seeking to vacate his conviction and sentence ("Motion").  ("Mot.," Doc. # 186; see also Civ. No. 10-00599-DAE, Doc. # 1.)  On December 29, 2010, the Government filed its Response to Petitioner's Motion ("Response"). ("Resp.," Doc. # 193.)  On January 26, 2011, the Court granted Petitioner leave to reply to the Government's Response.  (Doc. # 195.)  Petitioner filed his Reply on February 17, 2011.  ("Reply," Doc. # 196.)

Petitioner is presently incarcerated at Low Security Correctional Institution Butner, in Butner, North Carolina.  (Mot. at 2.)

### STANDARD OF REVIEW

The Court's review of a petitioner's motion is provided for by statute:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  The scope of collateral attack of a sentence under § 2255 is limited and does not encompass all claimed errors in conviction and sentencing. United States v. Addonizio, 442 U.S. 178, 185 (1979).  Under § 2255, the court shall hold an evidentiary hearing on a petitioner's motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  The standard for holding an evidentiary hearing is whether the petitioner has made specific factual allegations that, if true, state a claim on which relief could be granted.  United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984).

An evidentiary hearing is not required if the petitioner's allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal."  United States. v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003).  Mere conclusory statements, without supporting evidence, are not sufficient to require a hearing.  United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993).  Although the moving party is not required to detail his evidence, he must "make factual allegations" to establish his right to a hearing.  United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980). The Court has discretion to ascertain whether a claim is substantial before granting a full evidentiary hearing.  Sanders v. United States, 373 U.S. 1, 18 (1963).  That

discretion is limited, however, when a petitioner claims that he or she instructed his or her attorney to file an appeal and the attorney failed to do so. United States v. Sandoval-Lopez, 409 F.3d 1193, 1197 (9th Cir. 2005). In such situations, evidentiary hearings generally are necessary to determine whether the petitioner, in fact, made such an express instruction. See id.

## DISCUSSION

Petitioner seeks to vacate his sentence as to Counts 8–9 and 11–13. (Mot. at 24–26.) Specifically, Petitioner alleges the following fourteen claims:

1. Trial counsel was constitutionally ineffective for failing to obtain a mistrial when the Court dismissed "resulting in death" allegations in Counts 1 and 6 (id. at 3, 26);

2. Trial counsel was constitutionally ineffective for failing to present a lack of financial motive by Petitioner (id. at 3);

3. Trial counsel was constitutionally ineffective for failing to present evidence that Petitioner took over treating patients and submitting reimbursement claims for patients of Dr. Donald Purcell (id. at 3);

4. Trial counsel was constitutionally ineffective for failing to present evidence that petitioner had treatment plans for the undercover "patients"

and cut off their prescriptions when they failed to get blood and urine tests, (<u>id.</u> at 4);

5. Trial counsel was constitutionally ineffective for failing to present evidence that the government had a vendetta against Petitioner for his starting a needle exchange program in the State of Hawaii (<u>id.</u>);

6. Trial counsel was constitutionally ineffective for failing to object to composition of the jury (<u>id.</u> at 26);

7. Trial counsel was constitutionally ineffective for failing to object to the Court's sentencing guideline calculations and the manner in which it determined Petitioner's sentence (<u>id.</u> at 27);

8. Trial counsel was constitutionally ineffective for failing to object that the Government improperly or illegally used Gehrett Stone as an undercover informant against Petitioner (<u>id.</u> at 26–27);

9. Trial counsel was constitutionally ineffective for failing to object to prosecutor's closing arguments (<u>id.</u> at 34);

10. The Court erred when it denied Petitioner's motion to suppress (<u>id.</u> at 28-29);

11. The Court erred when it failed to declare a mistrial when the government dropped the Medicare fraud counts (id. at 26);

12. The Court erred when it admitted testimony from the Long's pharmacist, the DASH employees, and Keith Kamita of the Narcotics Enforcement Division (id. at 30-32);

13. The Court erroneously instructed the jury on the elements of the crimes charged in Counts 1 through 13 (id. at 33);

14. The Court erred when it failed to declare a mistrial after the Court dismissed the resulting in death language from Counts 1 and 6 (id. at 33);

Petitioner raises additional counts in his reply to the Government's response to Petitioner's § 2255 motion. Specifically, Petitioner claims that trial counsel was ineffective for (1) failing to object to what Petitioner calls the "Government's climate of guilt case theory" (Reply at 6–9); (2) failing to raise an entrapment defense (id. at 10–16); and (3) failing to raise a sentence entrapment defense (id. 16–18).

Petitioner also claims in his Reply that his appellate counsel did not follow the requirements of Anders v. California by failing to provide Petitioner a copy of appellate counsel's Anders Brief in time to allow Petitioner to raise claims in a pro se brief. (Id. at 5.)

9

I.    <u>Procedural Analysis</u>

The Ninth Circuit has already considered most of the issues underlying Petitioner's claims and has determined that the issues lack merit as grounds for appeal.  (Doc. # 186.)  Petitioner therefore cannot raise these claims under § 2255.  <u>See</u> <u>United States v. Hayes</u>, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition."); <u>Hammond v. United States</u>, 408 F.2d 481, 483 (9th Cir. 1969) ("Section 2255 may not be invoked to relitigate questions which were or should have been raised on a direct appeal from the judgment of conviction.").

In the instant case, the Ninth Circuit examined these claims when Petitioner's appellate counsel filed an <u>Anders</u> Brief.  According to the United States Supreme Court, when appellate counsel seeks to withdraw representation counsel must submit "a brief referring to anything in the record that might arguably support the appeal." <u>Anders</u>, 386 U.S. at 744.  Based on this brief and an examination of the record, the appellate court must decide whether the appeal is frivolous.  <u>Id.</u>  If frivolous, the court may grant counsel's request to withdraw and dismiss the appeal.  <u>Id.</u>  If, however, the court finds any of the legal points

arguable on their merits, the court must afford the appellant the assistance of counsel to argue the appeal.  Id.

Here, after receiving the Anders Brief, the Ninth Circuit gave Petitioner an opportunity to file a pro se supplemental brief or answering brief, but Petitioner failed to do so.  (Doc. # 186 at 2.)  The Ninth Circuit then conducted an "independent review of the record [which] disclose[d] no arguable grounds for relief on direct appeal."  (Id.)  The Ninth Circuit thereafter denied Petitioner's appeal.  (Id.)  Accordingly, to the extent that Petitioner's instant claims were addressed in the Anders Brief, the Court will not now consider them as the Ninth Circuit has already rejected their validity.  Hayes, 231 F.3d at 1139 ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition.").  Appellate counsel's Anders Brief explicitly addressed issues which undercut the majority of the Petitioners claims.  Indeed, of the fourteen cognizable claims only five are not procedurally barred.[1]

Petitioner first claims that his trial counsel was constitutionally ineffective for failing to obtain a mistrial when the Court dismissed "resulting in death" allegations in Counts 1 and 6.  The Anders Brief, however, states

---

[1] Those include his second, third, fourth, fifth, and eighth claims.

specifically that the Court's failure to declare a mistrial after dismissing the "resulting-in-death allegations set forth in Counts 1 and 6 was not plain error." (Anders Br. at 39–40.)  This claim was therefore considered and rejected by the Ninth Circuit.[2]

Petitioner's sixth claim is that his trial counsel was constitutionally ineffective for failing to object to composition of the jury.  The Anders Brief, however, found that there was no basis to challenge the jury selection process. (Anders Br. at 38.)  The Ninth Circuit necessarily agreed with this conclusion because it dismissed the appeal.  Anders, 386 U.S. at 744.  Accordingly, the court will not now consider Petitioner's sixth claim.

Petitioner's seventh claim is that trial counsel was constitutionally ineffective for failing to object to the Court's sentencing guideline calculations and the manner in which it determined Petitioner's sentence.  The Anders Brief stated specifically, however, that

> the record [does not] provide any basis for challenging the district
> court's sentencing determination.  The district court did not treat the
> guidelines as presumptively reasonable, articulated the reasons that
> prompted it to reject Mr. Odegaard's arguments for a 12-month

---

[2] Assuming it were possible for counsel to be ineffective even when the Court did not commit plain error under these circumstances, the Court finds under Strickland, that trial counsel was not ineffective as discussed infra.

sentence and considered the statutory factors set forth in 18 U.S.C.
§ 3553(a)

(Anders Br. at 41.)  Accordingly the Ninth Circuit also considered this argument

and rejected it.  This Court will not now let Petitioner invoke § 2255 "to relitigate

questions which were . . . raised on a direct appeal from the judgment of

conviction."  Hammond, 408 F.2d at 483.

Petitioner's ninth claim is that his trial counsel was constitutionally

ineffective for failing to object to prosecutor's closing arguments.  The Anders

Brief, however, states clearly that "the record [did not] disclose a basis to argue

that, as a matter of plain error, the prosecutor committed misconduct in any fashion

during his closing and rebuttal arguments to the jury."  (Anders Br. at 40–41.)  The

Ninth Circuit agreed by dismissing the appeal.  Accordingly, Petitioner's ninth

claim cannot now be relitigated.[3]

Petitioner next claims that this Court erred when it denied Petitioner's

motion to suppress.  Once more, however, the Anders Brief specifically

contemplated this possibility and concluded that this Court did not err in denying

Petitioner's motion to suppress evidence based on the credibility finding in direct

---

[3] As with petitioner's first claim, assuming it were possible for counsel to be
ineffective even when the Court did not commit plain error under these
circumstances, the Court finds under Strickland that trial counsel was not
ineffective as discussed infra.

contravention of what the Petitioner now asserts. (Anders Br. at 38.) The Court will not therefore allow the Petitioner to relitigate this question via § 2255.

Petitioner's eleventh claim is that the Court erred by failing to declare a mistrial when the government denied the Medicare fraud counts. The Anders Brief concluded to the contrary. (Anders Br. at 39.) This contention is therefore also without merit.

Petitioner's twelfth claim is that the Court erred when it admitted testimony from the Long's pharmacist, the DASH employees, and Keith Kamita of the Narcotics Enforcement Division. This argument was discussed at length in the Anders Brief and ultimately rejected. (Anders Br. at 50–53.) Again, the Court will not allow Petitioner to relitigate this claim now.

Petitioner's thirteenth claim is that the Court erroneously instructed the jury on the elements of the crimes charged in Counts 1 through 13. The Anders Brief, however, states that "the record does not reflect a basis to challenge any of the instructions. The district court's instruction on the elements of the charged offenses and its theory-of-defense instructions were in accord with [the Ninth Circuit's] decision in United States v. Feingold, 454 F.3d 1001 (9th Cir. 2006). . . . And under the district court's instructions, the jury acquitted Mr.

Odegaard on eight of the thirteen counts brought against him." (Anders Br. at 40.)

Petitioner may not now re-raise this issue before this Court in his habeas petition.

Petitioner's final claim is that this Court erred when it failed to declare

a mistrial after the Court dismissed the resulting in death language from Counts 1

and 6. As discussed, the Anders Brief found to the contrary. (Anders Br. at

39–40.) The Court will not revisit this issue.

In sum, each of these claims were raised in front of the Ninth Circuit

in appellate counsel's Anders Brief. The Ninth Circuit provided Petitioner the

opportunity to provide a pro se supplemental brief but Petitioner failed to do so.[4]

Finally the Ninth Circuit, after reviewing the Anders Brief, conducted an

"independent review of the record [which] disclose[d] no arguable grounds for

relief on direct appeal." (Doc. # 182 at 2.) Accordingly, The Ninth Circuit has

already considered these claims both in the context of the Anders Brief as well as

after an "independent review of the record." (Id.) Petitioner may not, therefore,

now raise these issues again per § 2255. The statute may not be "invoked to

relitigate questions which were or should have been raised on a direct appeal from

the judgment of conviction." United States v. Marchese, 341 F.2d 782, 789 (9th

Cir. 1965); see also Hayes, 231 F.3d at 1139 ("When a defendant has raised a

_____

[4] Petitioner's assertion that he was denied the opportunity to file a pro se brief is contradicted by the record as discussed infra.

claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition.")  Put simply, an issue addressed on direct appeal cannot be brought up as part of a petition under § 2255.  Olney v. United States, 433 F.2d 161, 162 (9th Cir. 1970).  Petitioner is therefore barred from relitigating these issues before this Court.

II.     Ineffective Assistance of Counsel

As discussed, of the fourteen cognizable claims, only five were not litigated on appeal in front of the Ninth Circuit.  All five of them relate to ineffective assistance of counsel.  In an abundance of caution, the Court will address not only these five claims but each of Petitioner's ineffective assistance of counsel claims as though they were not raised on direct appeal because "[t]he customary procedure in this Circuit for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255."  United States v. Hanoum, 33 F.3d 1128, 1131 (9th Cir. 1994).

The United States Supreme Court has interpreted the guarantee of a fair trial in the Sixth Amendment of the United States Constitution to encompass the right to effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 684–85 (1984).  Accordingly, counsel's failure to provide adequate legal assistance may deprive a defendant of the constitutional right to counsel.  Id. at

686. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) in light of all the circumstances, his counsel's performance was outside the "wide range of professionally competent assistance," by identifying specific material errors or omissions and (2) his defense was so prejudiced by his counsel's errors that there is a reasonable probability that, but for his counsel's deficient representation, the result of the proceedings would have been different. Id. at 687–89; see also Hensley v. Christ, 67 F.3d 181, 184–85 (9th Cir. 1995) (a petitioner must show that "his counsel's performance was so deficient that it fell below an 'objective standard of reasonableness.' In addition, a [petitioner] must show that the deficient performance prejudiced the defense and made the trial results unreliable."). To successfully demonstrate ineffective assistance of counsel, Petitioner must satisfy both prongs of the test.

The performance inquiry considers whether counsel's assistance was reasonable considering all of the circumstances. Id. at 688. There is no particular set of detailed rules to apply to determine whether the assistance was reasonable. Id. A court's scrutiny of counsel's performance must be highly deferential to

counsel. Id. at 689. "[T]hat is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quotations omitted); see also United States v. Austin, 817 F.2d 1352, 1354 (9th Cir. 1987) (finding a strong presumption that an attorney provided effective assistance); Michel v. Louisiana, 350 U.S. 91, 101 (1955) (defendant must overcome presumption of effectiveness, including the possibility that, under the circumstances, the challenged action might be considered sound trial strategy). Counsel's strategic decisions made after thorough investigation of the law and facts are virtually unchallengeable. Strickland, 466 U.S. at 690.

It is not enough that the defendant show counsel's actions were unreasonable; the defendant also must affirmatively prove prejudice. Id. at 693. Put simply, "even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense." Id. at 693. Indeed, judicial scrutiny of counsel's performance must be highly deferential and must take into account the facts of the particular case, viewed at the time of counsel's conduct. See id. at 689–90.

Finally, trial counsel is not required to present a particular defense merely because the defense might be available and viable. Mickey v. Ayers, 606 F.3d 1223, 1238 (9th Cir. 2010). For example, counsel may forego a certain

defense because the defense is not entirely persuasive, is subject to serious cross-examination, or would expose the jury to the defendant's other wrongdoing.  Id.

Turning to the allegations, Petitioner first claims that trial counsel was constitutionally ineffective for failing to obtain a mistrial when the Court dismissed "resulting in death" allegations in Counts 1 and 6.  Petitioner's counsel did not err, however, and, in any event,  Petitioner has not demonstrated that he suffered any prejudice.  Strickland, 466 U.S. at 687–89.  The government proffered considerable evidence to support the allegations, including testimony of three Honolulu Police Department officers (ER 480–84, 486–92, 678–80); two medical examiners (ER 509–30, 541–45, 702–12, 720–23); and a lab technician qualified as an expert in forensic toxicology (ER 724–41, 772–80).

Although trial counsel did not move to strike most of this testimony, counsel did convince the Court to strike the "resulting in death" language from the indictment.  (ER 1206–08).  Furthermore, the Court granted Petitioner's motion to strike from evidence photographs of the patients' dead bodies lying on the bed and on the couch where the bodies were found.  (Id.)  These photos were never shown to the jury.  (Id.)   Finally, the Court clearly instructed the jury not to consider the "resulting in death" allegations. (ER 1193–94).

It is well established that juries are presumed to follow their instructions, Richardson v. Marsh, 481 U.S. 200, 211 (1987), and that timely instruction from the judge usually cures the prejudicial impact of evidence unless it is highly prejudicial or the instruction is clearly inadequate. United States v. Berry, 627 F.2d 193, 198 (9th Cir. 1980) (citing United States v. Johnson, 618 F.2d 60, 62 (9th Cir. 1980)).

Here, the jury acquitted Petitioner on Counts 1 and 6. The record therefore indicates that the jury was not prejudiced by the Government's "resulting in death" evidence. The jury followed the Court's instructions with respect to these counts. As a result Petitioner has not demonstrated he suffered prejudice by his attorney's failure to obtain a mistrial. Petitioner's first claim is therefore meritless.

Petitioner's second claim, that trial counsel was constitutionally ineffective for failing to present a lack of financial motive by Petitioner, is simply unsubstantiated by the record. Petitioner's trial counsel cross-examined the case's lead DEA investigator, John Palomo, and adduced testimony that investigators had conducted a financial investigation of Petitioner and found no evidence of unexplained wealth. (ER 422.) Counsel further argued those facts in closing. (ER 1258.) In fact, trial counsel's strategy was to present the case that Petitioner was

treating his patients according to a legitimate physician's recognized standard of care (Bervar Decl. ¶ 7), and during closing argument trial counsel repeatedly pointed out that the Government presented no evidence that Petitioner was "selling prescriptions." (ER 1257–59.) Thus Petitioner is incorrect when he states that his trial counsel failed to argue that Petitioner lacked a financial motive. Count two therefore lacks merit.

Petitioner also fails on his third claim, specifically that trial counsel was constitutionally ineffective for failing to present evidence that Petitioner took over treating pain patients of his former colleague Dr. Donald Purcell. (Mot. at 3.) Petitioner's relationship with Purcell led to a federal consent decree settling allegations that Petitioner had engaged in an improper billing scheme with Purcell, who had a substantial number of pain management patients. According to the December 1993 Settlement Agreement, Purcell previously had been banned from participating in Federal health programs because of an earlier conviction for improper billing practices. To circumvent Purcell's ban, Petitioner would bill Medicare and Medicaid for treatment of patients actually seen by Purcell and then share revenue with Purcell. As part of the settlement, Petitioner agreed to pay the United States $125,000, plus interest, for a total of $136,898.

Petitioner's trial counsel considered it unwise to raise this incident before the jury. (Bervar Decl. ¶ 6.) Although Petitioner wanted to use his relationship with Purcell to help explain the large volume of opiate prescriptions, trial counsel thought that raising the Purcell matter would let the Government show the jury that Petitioner had engaged in wrongdoing with Purcell. (Id.) Trial counsel therefore made a tactical decision not to disclose the Purcell matter to the jury. Under Strickland, the Court must grant deference to precisely this type of strategic decision. That is, Petitioner here "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 686. The Court finds that trial counsel's strategy was sound and that Petitioner has presented no evidence to the contrary. Accordingly, Petitioner's third claim is meritless.

Petitioner's fourth claim is that trial counsel was constitutionally ineffective for failing to present evidence that petitioner had treatment plans for the undercover "patients" and cut off their prescriptions when they failed to get blood and urine tests. (Mot. at 4.) The record, however, does not support this claim. In fact, the record shows trial counsel brought forth evidence that Petitioner had quit providing prescriptions to one undercover investigator after the

investigator failed to obtain the blood test Petitioner required.  (ER 626–27.)  This contention is therefore without merit.

Petitioner's fifth claim alleges that trial counsel was constitutionally ineffective for failing to present evidence that the government had a vendetta against Petitioner for his starting a needle exchange program in the State of Hawaii.  (Mot. at 4.)  Trial counsel chose not to present this defense for three reasons: (1) the defense was weak because many years had passed since the state adopted the needle exchange program; (2) evidence of the vendetta was lacking; and (3) the defense would necessarily imply that Petitioner had done something wrong by helping to establish the program.  (Bervar Decl. ¶ 6.)  Accordingly, in discussions with Petitioner, trial counsel argued against using the vendetta defense, and Petitioner ultimately followed counsel's advice.  Id.

Counsel's action here indeed "might be considered sound trial strategy" under Strickland.  466 U.S. at 686. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  Petitioner has offered no evidence to rebut the presumption that trial counsel's strategy was sound.   Even if Petitioner could overcome this presumption, Petitioner still would have to demonstrate the outcome would have been different if trial counsel had employed the vendetta defense.  Strickland, 466

U.S. at 694. Petitioner has presented no such evidence. Petitioner's fifth claim is therefore without merit.

Petitioner's argues next that his trial counsel was constitutionally ineffective for failing to object to composition of the jury. The Court disagrees. First, as discussed, the Ninth Circuit considered this issue as it was raised in the <u>Anders</u> Brief on direct appeal. (<u>Anders</u> Br. at 38.) In any event, the record reflects that the jury in Petitioner's trial was multi-racial and consisted of ten women and two men. (Resp. at 38.) Petitioner was an active participant in selecting the jury. (Bervar Decl. ¶ 9.) Further, Petitioner has not with any specificity alleged which juror should or should not have been selected or discharged in his petition. After reviewing the record, the Court can find no evidence that the jury selected in Petitioner's case violated <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), or any other requirement. This contention is therefore without merit.

Petitioner's seventh claim is that his trial counsel was constitutionally ineffective for failing to object to the Court's sentencing guideline calculations and the manner in which it determined Petitioner's sentence. This contention is without merit—Petitioner has failed to show how an objection would have changed the outcome at the sentencing. The Court, as affirmed by the Ninth Circuit, properly calculated the guidelines range which applied a single adjustment for

abuse of a position of trust per U.S.S.G. § 3B1.3. (ER 1550.) Further, the Court imposed a below guideline sentence of imprisonment (ER 1577) and did not presume the guidelines range to be reasonable (ER 1570–79). Finally, the Court also considered the factors set forth in 18 U.S.C. § 3553(a) and explained why it rejected Petitioner's arguments for a lower sentence. (ER 1570–79.) In short, Petitioner has failed entirely to demonstrate any prejudice by Trial counsel's failure to object to the sentencing because there was no error to which trial counsel could have objected.

Petitioner's eighth claim is that his trial counsel was constitutionally ineffective for failing to object that the Government improperly or illegally used Gehrett Stone as an undercover informant against Petitioner. (Mot. at 26–27.) The Court cannot agree. Petitioner argues that the Government engaged in misconduct by using Gehrett Stone as an undercover informant in the investigation. Specifically, Petitioner asserts that the government "improperly or illegally used" Mr. Stone and that trial counsel erred in not objecting to his use. (Mot. at 26–27.) Petitioner's brief cites no authority specifying how the Government's use of Mr. Stone was improper or illegal, however, Petitioner seems to object to Mr. Stone as he was "a convicted felon on probation making a deal with the Government to lower his sentence by attempting to set-up [Petitioner]." (Mot. at 26.)

During his visits to Petitioner's office, Mr. Stone repeatedly gave Petitioner cash gratuities or tips after Petitioner prescribed opiates to Mr. Stone. (ER 639, 644, 652.)  Petitioner asserts that the tactic of offering the tips was "unjust, if not illegal" because Stone's act put "Petitioner in a no-win situation" in which Petitioner could either appear rude by rejecting the tip or engage in an act that "left the impression of impropriety," which Mr. Stone secretly recorded.  (Mot. at 27.)

As a preliminary matter, the Government correctly points out that Petitioner could have raised this issue on appeal but did not.  (Resp. at 43.)  The issue therefore is procedurally barred.  <u>Hammond</u>, 408 F.2d at 483 (stating that Section 2255 "may not be invoked to relitigate questions which were or <u>should have been raised</u> on a direct appeal from a judgment of conviction." (emphasis added)).  Even if the issue were not barred, Petitioner's claim would fail.  There is nothing inherently wrong with the Government using an informant.  <u>United States v. Hoyt</u>, 879 F.2d 505, 510 (9th Cir. 1989).  Indeed, "the government may use artifice and stratagem to ferret out criminal activity."  <u>United States v. Simpson,</u>

813 F.2d 1462, 1466 (9th Cir. 1987) (quoting United States v. Ramirez, 710 F.2d 535, 541 (9th Cir. 1983)).

It is, of course, possible for subversive law enforcement action to violate a person's Fifth Amendment due process rights if the action violates "fundamental fairness" and is thereby "shocking to the universal sense of justice," United States v. Russell, 411 U.S. 423, 432 (1973). This due process defense based upon the alleged outrageous conduct of government agents, however, is often pleaded, but is very rarely successful. See United States v. Pemberton, 853 F.2d 730, 735 (9th Cir. 1988). Even when an informant engages in behavior that shocks the sense of human decency, such action does not necessarily amount to outrageous conduct. For example, in United States v. Simpson, 813 F.2d 1462 (9th Cir. 1987), the FBI hired an informant whom the agency knew to be a prostitute, a heroin user, and a fugitive from Canadian drug charges. Id. at 1464. The informant befriended and engaged in a five-month-long sexual relationship with a suspected heroin dealer so that the informant could eventually convince the suspect to sell drugs to undercover FBI agents who were posing as the informant's friend. Even this was "not so shocking as to violate the due process clause." Id. at 1465.

Here, Mr. Stone was a convicted felon attempting to reduce his sentence by participating in the Government's investigation of Petitioner. There is simply nothing about this arrangement that is "shocking to the universal sense of justice." Russell, 411 U.S. at 432. Instead, the Government permissively used "artifice and stratagem to ferret out criminal activity."[5] Simpson, 813 F.2d at 1466. Accordingly, any objection that Petitioner's trial counsel could have raised with respect to Mr. Stone would not have been sustained. Petitioner has therefore failed to demonstrate he suffered any prejudice by his counsel's failure to object to Mr. Stone. Count eight is therefore without merit.

Petitioner's final ineffective assistance of counsel claim is also meritless. Petitioner here alleges that his trial counsel was ineffective for failing to object to the prosecutor's closing arguments. Petitioner, however, has failed to point to a single specific instance of potential misconduct. After a review of the record, the Court concludes that the prosecutor in Petitioner's case simply did not engage in any misconduct during his closing and rebuttal arguments to the jury. In other words, there was nothing to which trial counsel could have objected and prevailed. Petitioner has therefore failed to demonstrate he suffered any prejudice

---

[5] The Court notes that to the extent Petitioner argues prosecutorial misconduct on these grounds, (see Mot. at 27), this argument is defeated for the same reasons.

by his Counsel's failure to object to the prosecutor's closing arguments. Petitioner's final ineffective assistance of counsel claim, therefore, is also meritless.

III.    Petitioner's Reply Arguments

Petitioner raises several arguments for the first time in his reply to the Government's Response. These include an allegation that appellate counsel failed to follow the proper procedures required by Anders, (Reply at 4), and three new ineffective assistance of trial counsel arguments[6] (id. at 6–18). It is well established, however, that the Court will not address an argument raised for the first time on reply. See Local Rule 7.4 ("Any argument raised for the first time in the reply shall be disregarded."); see also United States v. Berry, 624 F.3d 1031, 1039 n.7 (9th Cir. 2010) (declining to address an argument raised for the first time in a reply brief in a section 2255 motion); Belgrade v. Montana, 123 F.3d 1210, 1216 (9th Cir. 1997) (declining to consider claims not raised in the original habeas petition to the district court).

---

[6] Petitioner claims trial counsel was constitutionally ineffective for failing to "object and urge a mistrial" for what Petitioner calls the Government's "climate of guilt" case theory, for trial counsel's failure to urge a criminal entrapment defense, and for trial counsel's failure to raise a sentence entrapment defense.

The Court nonetheless will address Petitioner's assertion that he did not receive the <u>Anders</u> Brief.  Petitioner asserts that appellate counsel failed to follow procedures required by <u>Anders</u> because Petitioner was unaware that his appellate counsel had filed the <u>Anders</u> Brief.  (Reply at 4).  Petitioner further asserts that he was never notified that he had the opportunity to raise issues on appeal.  (<u>Id.</u>)  These assertions are directly contradicted by the record.  The <u>Anders</u> Brief's certificate of service indicates the brief was in fact served on Petitioner at the Big Spring Federal Correctional Institution in Big Spring, Texas on February 5, 2009.  (<u>Anders</u> Br., Certificate of Service.)  Further, the Ninth Circuit specifically concluded that Petitioner had "the opportunity to file a pro se supplemental brief" and that Petitioner failed to do so.  (Doc. # 186 at 2.)  Simply put, Petitioner's assertion that he did not receive the <u>Anders</u> Brief is contradicted by both the record as well as the Ninth Circuit's explicit determination on appeal.  This allegation is therefore without merit.

IV.    <u>Certificate of Appealability</u>

A Certificate of Appealability may only be issued if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner is required to show that reasonable jurists could debate whether the issues could have been resolved differently or are "adequate to

deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483

(2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983), superseded on

other grounds by 28 U.S.C. § 2253(c)(2)); see also Mendez v. Knowles, 556 F.3d

757, 771 (9th Cir. 2009).

Here Petitioner has made no such showing. Reasonable jurists could

not debate whether these issues could have been resolved differently. Further, the

issues raised are not "adequate to deserve encouragement to proceed further."

Slack, 529 U.S. at 483. Accordingly Petitioner is denied a Certificate of

Appealability.

## CONCLUSION

For the reasons set forth above, the Court DENIES Petitioner's 28

U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence. (Doc. # 188.)

Further, because Petitioner has not made a substantial showing of the denial of a

constitutional right, the Court also DENIES Petitioner a Certificate of

Appealability

IT IS SO ORDERED.

DATED: Honolulu, HI, March 31, 2011.



_____
David Alan Ezra
United States District Judge

Barry N. Odegaard v. United States, CIVIL NO. 10-00599 DAE-BMK
CR. NO. 06-00178 DAE; ORDER (1) DENYING PETITIONER'S § 2255
MOTION AND (2) DENYING A CERTIFICATE OF APPEALABILITY